ARMSTRONG, Judge.
Plaintiff/claimant, Maurice W. Brown, appeals a district court judgment affirming an administrative decision disqualifying him from receiving unemployment compensation benefits.
Brown was employed by Waste Management, Inc., referred to as American Waste in claimant’s petition and throughout the proceedings below. He began working for the company in 1980 and was dismissed on November 11,1985 for allegedly permitting an unauthorized employee to drive a company vehicle, and falsifying an accident report after the vehicle was involved in an accident. Claimant was disqualified from receiving unemployment compensation benefits after the Administrator of the Louisiana Office of Employment Security (LOES) found that he had been discharged by American Waste for “misconduct connected with his employment.” That decision was subsequently affirmed by the Appeals Referee, the LOES Board of Review, and *1258 after petitioning for judicial review, by the district court. Claimant now appeals to this court claiming that there was insufficient evidence to support the decision of the district court. In its brief on appeal the LOES reverses its position and joins the claimant in demanding that the decision of the district court be reversed.
Under La.R.S. 23:1634 the factual findings of the Board of Review are, in the absence of fraud, conclusive if supported by sufficient evidence. Judicial review presents two questions of law for resolution:
(1) Are the findings of fact by the Board of Review supported by sufficient evidence?
(2) Based on those findings, are the legal conclusions of the Board of Review correct?
Sell v. Employment Security, 499 So.2d 1285 (La.App. 4th Cir.1986); Bonner v. Blache, 499 So.2d 1278 (La.App. 4th Cir.1986).
The findings of fact as determined by the Appeals Referee and adopted by the Board of Review are as follows:
“The claimant worked for the above named employer from 1980 until November 11,1985. He was a supervisor working full-time. The claimant was discharged by Mr. Ray Mongeut.
On November 6, 1985, the claimant allowed an employee who was unauthorized to drive a vehicle. While driving this vehicle, this other employee had an accident with the claimant. He had run into the back of the truck the claimant was driving. Later, after talking to his immediate supervisor, it was decided that the claimant would indicate that he was driving the vehicle that was in the accident. Upon being questioned thereafter, the claimant admitted the offense. He and the supervisor were then subsequently discharged. It is the policy of the employer that unauthorized persons will not drive vehicles, including employees. This policy was explained to all employees in a letter sent to them on September 13, 1985. (Employer ^exhibit 2). The claimant was discharged.”
The record reflects that the claimant was asked to retrieve a heavy truck which had been disabled and subsequently repaired in the field. Brown requested another employee to come with him and drive a light pickup truck back to the yard. He was given a laborer, who was not authorized to drive company vehicles. An assistant manager was aware of this and cautioned the claimant to be careful. Claimant was authorized by a route foreman to bring the laborer along to drive the pickup truck. According to the claimant, it was a common practice for these unauthorized employees to drive company vehicles.
On the way back to the yard Brown was driving the heavy truck while the laborer followed in the pickup truck. As they came down an overpass the brakes on the pickup truck failed and it rear-ended the heavy truck. Claimant informed his supervisor, Leroy Matthews, of the accident and Matthews told him to state on the accident report that he (claimant) had been driving the pickup truck. Matthews informed the claimant that he would file a correct report after he consulted with an assistant general manager who was then out of town. Management subsequently discovered the ruse and dismissed both the claimant and his supervisor, Matthews.
The claimant was disqualified from receiving unemployment compensation under La.R.S. 23:1601(2) which states in part: “An individual shall be disqualified for benefits ... if the administrator finds that he has been discharged ... for misconduct connected with his employment.” The Louisiana Supreme Court examined this provision in Charbonnet v. Gerace, 457 So.2d 676 (La.1984), and stated:
“For a claimant to be disqualified from benefits because of ‘misconduct connected with his employment’ under La.R.S. 23:1601(2), the ‘misconduct’ must have resulted from willful or wanton disregard of the employer’s interest, from a deliberate violation of the employer’s rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees. Pilgram Manor Nursing Home, *1259 Inc. v. Gerace, 337 So.2d 660 (La.App. 3rd Cir.1976). The type of behavior which is considered ‘willful misconduct' is intentional wrong behavior. Banks v. Administrator of Employment Security, 393 So.2d 696 (La.1981). Because of the beneficial purpose of unemployment compensation, the term ‘misconduct’ should be construed so as to favor the awarding of benefits rather than disqualification.”
See also: Canty v. Administrator, Louisiana Office of Employment Security, 517 So.2d 1240 (La.App. 4th Cir.1987), quoting the above passage from Charbonnet v. Gerace, supra.
Reviewing the factual findings adopted by the Board of Review, we note that the record establishes that the letter in which the company’s driving policy was set forth, was sent only to supervisors—not all employees. The claimant maintains that he did not know of the policy and had never seen the letter in question. There is a dispute as to whether the claimant was a supervisor. He testified that he was not a supervisor while the only company representative to testify at the hearing stated that he was. We do not find it necessary to resolve this issue. The record furnishes a sufficient basis to conclude that the claimant was aware that laborers were not authorized to drive company vehicles.
However, the record also reflects that it was common practice for unauthorized employees to drive company vehicles; that the claimant was given this particular laborer when he specifically requested someone to accompany him to drive the pickup truck back to the yard; that his supervisor knowingly allowed the unauthorized person to drive the pickup truck; and that claimant’s supervisor told him to falsify an initial accident report which claimant understood would not be filed.
Even if there was a policy prohibiting unauthorized persons from driving company vehicles, it apparently was the practice of supervisors to allow unauthorized persons to drive such vehicles whenever necessary to facilitate the operation of the business. This long-standing practice operated to effectively modify company policy, at least insofar as this claimant was concerned. Claimant’s role in this incident, besides filling out the accident report, is unclear. It actually appears that other persons, with authority over the claimant, sent the laborer with the claimant intending that that laborer drive the pickup truck back to the yard so that the claimant could return the heavy truck.
As to the claimant’s filling out of the false accident report, he stated that he did it because he was told to do so by his supervisor, and because he thought it would not be filed. Even the company representative, referring to the report, stated that he was sure the claimant was an employee who listened to the rules and listened to his supervisor and further commented, “which [sic] what do you do in [sic] situation like that.” The claimant was faced with the dilemma of accurately filling out a report and disobeying his immediate supervisor or obeying him and filling out the false report which he was led to believe would never be filed.
Considering the law and evidence we find that the district court erred in finding that the legal conclusions of the Board of Review were correct. That is, the claimant’s actions cannot be construed as the type of willful misconduct contemplated by La.R.S. 23:1601(2). In reaching this decision we construe the term “misconduct” so as to favor the awarding of benefits rather than disqualification.
For the reasons assigned we reverse the judgment of the trial court. In compliance with La.R.S. 23:1634 we remand this matter to the Louisiana Office of Employment Security, Board of Review, so that it may enter an order consistent with this opinion.
REVERSED AND REMANDED.